Case number 12-0322, Zira Sariwka v. Walgreen's Company. Alright, now we have two defendants, the City of Chicago and Walgreens, and Mr. Hollander and the attorneys that are going to represent those two parties, why don't you step up and formally identify yourselves for the record, if you would. I'm Garrett Boehm on behalf of Walgreens. Carrie Maloney-Layton on behalf of the City of Chicago. Alright, now for today's oral argument, I'm going to suggest approximately 20 minutes for both sides. Is that agreeable? You would each have approximately 10 minutes for your argument? If you've worked it out, that's fine too. And from that, 20 minutes, Mr. Hollander, you may save out some time for rebuttal. Alright. Yes, and as to the other parties, Mr. Hollander, although there were other parties in the Notice of Appeal, are you here representing? Yes, Anthony Rich-Robato on behalf of Midwest. If you want to step up, I apologize. Good morning, again. Anthony Rich-Robato for State Walton and Midwest Properties. And, Mr. Hollander, did you wish to concede that you're not raising any issues as to the employees? Yes, correct. We did not file briefs with respect to that party. Alright, so. That makes it simple. Pardon me? It makes it simple. Okay. We'll begin then, and you may proceed. Thank you, Judge. May I please report to the Council? As I said, my name is Eugene Hollander. I represent the Plaintiff in Ohio. On April 16, 2009, my client, a 77-year-old woman, was leaving the Walgreens in 933 North State. When she exited the store, she made a turn and, as her testimony established, took about one step where she tripped on a depression sidewalk, which was about 7 feet long, 10 inches wide by 2 inches deep. She struck her head and said… She stepped on the depression or slipped on the grate? On the depression, not the grate. Now, the depression was adjoining to the grate. There's no question she tripped and fell over the sidewalk. Within 4 months, my client timely filed suit against the City of Chicago and defendant Walgreens. In this case, there's no question that the defendants were negligent in maintaining the subject depression at sidewalk adjoining the grate. The evidence in this case was that Robert Wong, the store manager, made numerous 311 complaints to the City of Chicago, submitted a complaint online to the website, which was eventually funneled to the alderman, who in turn made his complaint to the City, we've got to fix this. There were a number of complaints prior to the dated question that even a senior, approximately a year before in 2008, had slipped and fell in the area. Now, the procedural background was as follows. Four months after the subject incident, we timely filed suit. As new information came to light regarding potential parties, Ms. Sirica filed an amendment complaint and eventually a second amendment complaint. Each and every time, both the original complaint and subsequent pleadings, the City of Chicago filed an answer admitting ownership of the subject sidewalk. We were lulled into a false sense of security that we had the right party in the right area. Clearly, this party, these defendants, possess superior knowledge as to who owned the subject sidewalk. So is it your position that the deposition shows that this injury actually occurred on the sidewalk and not? At the grate? It's the depression adjoining the sidewalk. It's to immediately adjacent to. So it's not the grate. It's actually the sidewalk. Correct. Now, in no time did the City of Chicago seek leave to withdraw its answer. They could have denied liability. They could have served the bill of particulars on the plaintiff. They chose none of those courses of action. And because of that, we were led to believe that, again, we had the right party. Now, there are three independent bases for maintaining liability against the City of Chicago. And first is that we have judicial admissions with the original answer, the answer to the amended complaint, and the answer to the second complaint. All of the pleadings are the allegations against the City, and all of the answers are virtually identical, that they own the subject property. The case law that we cited is clear, that those statements are judicial admissions, and that we can rely upon those judicial admissions for going forward. Had we known, for instance, that we denied ownership of the property, we would have questioned it, or we would have alleged. Well, let's assume for just today's purposes that, and I think that your opponents might take this position, that the fall occurred on the grate. Let's just assume. Now, if that is the case, how do you distinguish the Dixon case when the curb issue was where the plaintiff was injured, and originally the city admitted that they had a right and a duty to maintain the sidewalk, but the curb was basically something that the Illinois Department of Transportation had control of. And in that case, the appellate court affirmed that the city had not admitted anything more than simply that they had a duty and a right to maintain the sidewalks. But since the injury occurred on the curb, they were not bound by anything in terms of acknowledging that they had an obligation vis-a-vis the curb. Well, I think the case here is different because the allegation of the testimony was she tripped and fell on the sidewalk. And again, they had- In your case? Yes. And if they had information, or there were prior complaints, this wasn't an isolated instance. There were numerous- As it turned out, we got a discovery in the case way after the one-year statute. We could have filed a lawsuit against the CTA. We had 311 reports that were tendered to us, I think, on September 21st, 2010. And these reports, by the way, aren't that easy to decipher. And we had to take a number of depositions, and the ultimate person who could decipher the reports in this regard was proposed, I think, until December of 2010. So in this particular case, the case is distinguishable. They had knowledge about where the accident occurred. They had prior complaints as to where the injury occurred. They could have just simply, in their answer, said, we deny any and all liability or evidence of sufficient knowledge. They chose not to do that. Well, did they deny liability in the answer to the complaint? No, they admitted. They admitted control over the sidewalk. Correct. And did they admit anything other than that, that they had control over the sidewalk? No, that's what they admitted. All right. So my question is, how do you distinguish this case from the Dixon case? Well, because we have, again, it was alleged the accident happened on the sidewalk. There were specific prior complaints, 311 reports, from Walgreens, from another individual that they had fallen in the same area. Well, the Walgreens, I mean, I don't know if you're doing this piecemeal or what, but Walgreens apparently put some mud or dirt or something over. That was a year before. Correct. And then it was fixed. Testimony is uncontradicted that that was repaired after Walgreens did this. So how do you show that Walgreens had any obligation because they put some dirt there And then it was repaired by someone, not the city. There's two bases of liability against Walgreens. If you want to shift to Walgreens, we can talk about Walgreens. No, I don't. You mentioned them. Well, they're in the case. Let's talk about Walgreens. Walgreens is liable for two reasons. One, it's our theory in the case, in part, that they were negligent in terms of the repair. Now, that's one basis. Did they increase the damage to the hold-in by putting dirt in it? Hard to say. Two years before the accident. I'm sorry? It was almost two years before the accident. They just put some soil in there. They put some soil. And that increased the hold. I'm not saying it increased it, but it clearly was an adequate repair. And it was gone before your client fell in the hold-in. Presumably so. But it clearly was not an adequate repair. The other basis, aside from a negligent undertaking, which you think Walgreens undertook in this case, is that they have responsibility for the means of ingress and egress to their park. They are the inviter. And they invited my client, Mr. Weika, to enter the premises. And the Cooley case talks about that. The McDonald case talks about that. They have a duty to maintain a safe ingress and egress out of the property. And it's controlled by the circumstances and facts of the case. In this particular case, Mr. Wong admittedly took some action to try to repair the hold. He made complaints to the city. He told patrons, hey, you've got to be careful when you go out there. And he clearly viewed this. He even said that he used that particular stretch of sidewalk to come in and out of the Walgreens. So clearly they had a duty to maintain their property along with the city of Chicago. After he put that soil into that depression, some agency came out and fixed that hole, right? Well, the test. Maybe not very well, but it fixed it. The city of Chicago, they proffered in conjunction with their summary judgment, which we deposed Mr. Herrera, a civil engineer, testified it was his job. And there's another basis for liability against the city. Even if it wasn't their property, it's their job to ensure they contact the proper utility to make sure a repair is made and to ensure that it was done properly. So it's not just coordinating. It's part of it. But they have an obligation, as admitted by Herrera, that it's got to be done right. But who made that repair? There was a repair made, right? Substance to the soil. There was a repair, and apparently that repair failed. Isn't that right? Right. Okay, well, who made that repair? I don't think it's clear from the record who made the repair. Herrera said, look, this is what we do. We contact the utility or the CTA. I have to make sure it's done right. He was very, very clear in his testimony that's his job, that's his obligation, to make sure it's done right. Now, you know, the question is certainly going to come up, is there an obligation when you have, like, this sort of situation of this hole near the grate? Now, doesn't the CTA, didn't they have the obligation as far as the grate goes? They did. All right, and doesn't their obligation actually extend further to the systems and appurtenances, including the subway grates, and keep in a reasonably safe condition the property immediately surrounding that? I mean, we do have to have some lines, don't we? Well, we do. I think ultimately that's what the ordinance says, but, again, based upon the city. So there is an ordinance at play here. Right. And what does it say? I mean, we need to know because we have to draw the line. Somewhere the duty of one, you know, begins and ends, and then the next duty and the sidewalk begins. No, I don't understand that. So that's really the question. And I guess the line, so to speak, that would be drawn would be that the appurtenant sidewalk would be part of the CTA's property. But that was unbeknownst to the plaintiff when we filed suit and the city. But is it the obligation of the city or Walgreens to let you know where she fell? Well, when they admit that they own the property, they're stuck with it. Well, they admitted that they own the sidewalk, and nothing really has changed about that fact. The city today, as we sit here now, is in charge of the sidewalk. It's really, I mean, that's a given. The question is, does the ordinance require the CTA to take care of this area where the plaintiff fell? Well, I think the ordinance does do that, but, again, if we're led to believe this is the city's property, they could have just said, based upon the allegation and all the pleadings, deny. And it would have been simple. Then I would have scratched my head and said, wait, you don't own this property? When they say we admit ownership of the sidewalk and continue to do that, and they don't give us information until after the statute runs with the CTA reports, what are we supposed to do? I don't know. I think the allegations have to come from the plaintiff, not from the city or Walgreens or the other party that has been essentially dismissed. But when we allege that, and, again, if it's not their property, again, they can. But what did you allege? Did you allege she fell on the sidewalk or did you allege she fell on a CTA? We alleged the sidewalk. That's what we alleged. Okay. Was it different once she testified in her deposition and said she fell on the grate? I think her testimony was consistent with the allegations and all three pleadings. All right. So that's what we're left with. And, again, I have a few more minutes because I want to reserve some time. Well, if you allege that she fell on the sidewalk and they admitted that they controlled the sidewalk, isn't this really just going to come down to a disagreement as to where she fell? Well. Because they're saying now, yeah. And, frankly, if you allege that she fell on the sidewalk and they don't want to be in a position where they didn't make a good faith response, they're going to say, yeah, it's our sidewalk. But they're also saying today that you didn't adequately describe where she fell and so, therefore, we admit we own the sidewalk, but we don't believe she fell on the sidewalk. Well, they could easily have said, listen, we can't respond. We have insufficient knowledge as to where we fell. Or they could have easily served me with a demand for a bill of particulars before the deposition. I'm not sure that they have to do that. If they're responding to your plea, they're responding to your allegations, and if your allegations don't adequately set forth where she fell, their obligation is to respond to what you pled. You know, if you pled she fell on the sidewalk and she actually fell on this grate or this casing that surrounds the grate, then they answered your allegation. You just didn't adequately describe it. I think we did adequately describe it. Well, I think in the light of what we pled, their answer clearly dovetailed in with our allegations with respect to the sidewalk. Whether it was the sidewalk that the city owns or the casing of the grate, which they didn't own, they led us to believe that they owned that property. Well, didn't this come up really after the deposition of the plaintiff when she described where she fell and then they moved for summary judgment? Correct. They moved for summary judgment, and then, again, by that point, based on the testimony that established exactly where she fell. Correct. And by that point they argued there was no question of material fact that she actually fell on property controlled by the CTA, and therefore they didn't have an obligation. That was their position. All right. And in light of the fact, in addition to our position that these are clear judicial admissions, we believe, in light of my prior argument, that they're judicially stopped from asserting otherwise. And, again, the other argument I just want to leave with the court is, again, independent of the allegations and equitable estoppel, they voluntarily undertook, according to Herrera's testimony, to ensure that repairs were done and they were done properly. Well, did this gentleman say who did the repairs? I don't believe he recalled who did it. I know he testified that it was his job to contact the utility or the CT and he specifically questioned. He never said the city made these repairs. No, I'm sure he did. Okay. Unless the panel has any questions, I'll defer to my colleagues. All right. We'll give you some time for rebuttal. Thank you. Who's proceeding? The city or Walgreens? Mr. Boehm? Do I have your name right? Boehm? Boehm, correct. Thank you, Judge. Good morning, Mr. Boehm. May it please the Court, Counsel, my name is Garrett Boehm. I represent Walgreens in this matter. This Court should affirm summary judgment in Walgreens' favor for three reasons. The first reason is Walgreens did not control, possess, or appropriate the sidewalk or the grate where a plaintiff may have fallen. Second, Walgreens did not voluntarily assume a duty to repair, maintain, or warn a plaintiff about the condition of the sidewalk or the grate. Number three, Walgreens does not have a duty to warn against open and obvious conditions of which this applies. Let's talk about that filling in with the mud or whatever it was, dirt. The potting soil incident. Oh, potting soil. All right. So now, do you agree about the size of this hole here? Well, there is a picture of it. What is your information? And sometimes a picture is worth a thousand words, but I believe it's page 1140 in the record. And the hole is rectangular in nature along the grate, no more than a foot wide, maybe it sounds like maybe six feet long, and it's deteriorated along the way, maybe to a depth of one or two inches. Well, doesn't that suggest that this is part of the sidewalk? It is certainly concrete. I will leave it more to the city to determine whether or not it's part of the sidewalk or part of the grate. Yeah, I know. That's probably not my question to you. But as far as the possession and control, the plaintiff really doesn't make much of an argument as to whether Walgreens possessed and controlled the sidewalk. There was a lot of potting soil you must have had to put in there. There was some potting soil we put in there. Was that potting soil a product that sold at Walgreens? It was. They managed to use potting soil that Walgreens sold. Now, was the uncontradicted testimony that after you put some of your own potting soil in there that somebody came out, we don't know who, but someone came out and repaired this hole about a year before or maybe even almost two years before the fall involved in this case? It was in 2008 the potting soil was placed in this depression. A week later, that's the unrebutted testimony, a week later it was fixed. In other words, the concrete was repaired with concrete, not potting soil. Because it broke up again, right? It did break up again. There was a depression again. There was about nine, ten months later there was a depression again. Okay. Go on. But if there was any voluntarily assumed duty with regard to the potting soil, that duty expired when the repair was made. Regardless of whether or not the repair lasted for ten years or just nine months, that voluntarily assumed duty is strictly construed under Illinois law and limited to the action that was taken. So I would respectfully submit to this court that there was no voluntarily assumed duty to repair, maintain, or warn in 2009 when the plaintiff fell. The plaintiff suggests that Walgreens appropriated the sidewalk and the sites to McDonald and Cooley. Looking at the McDonald case first, in that case the plaintiff fell in a hole in a parkway that was concealed and not apparent. That parkway was used for purposes of parking by the bowling alley in that case. Here Walgreens did not use this area of sidewalk for any reason whatsoever. It might be different if Walgreens had a sidewalk sale there at the time, but that's not the case and there's nothing in this record to suggest that there was any appropriation. With regard to the condition of the sidewalk being open and obvious, the plaintiff stated in her deposition that it was a sunny day, she wasn't distracted, she didn't have anything in her arms that would have stopped her from seeing the sidewalk. And the standard when open and obvious is that of a reasonable person, what a reasonable person would have been expected to have seen and done. Not, for instance, looking at the Prostrand case involving a partially blind individual, the standard was not what a reasonable partially blind person would have done, but just what a reasonable person would have seen and what actions would have been taken by that reasonable person to ensure that person's safety. So, again, for those three reasons, oh, and as the Cooley case. What about this obligation to provide for the safe ingress and egress of your customers? Thank you, Judge, and that is the Cooley case. And in Cooley, there was an easement leading from a corner to the entrance of a tavern, and it was a brick walkway. That brick walkway was only used by the tavern and its invitees, and it was the only means of ingress and egress for that tavern. So in that case, the court found that there was a duty to repair, maintain, or warn as the conditions of that walkway. Here, the sidewalk where a plaintiff fell was not the only means of ingress and egress. There was about 180 degrees of available routes for the plaintiff to take to enter or exit the Walgreens store. So there was not any limitation on her ingress and egress here that would be applicable. If there's no further questions, I would ask the court to affirm summary judgment in Walgreens' favor. Thank you. Thank you. How about if we start with the size of the hole and where it was? Very well, Your Honor. May it please the court. Until today, there was no dispute regarding who had the duty to maintain the particular location of the hole where Ms. Seripka fell, or Seripka, I apologize if I am not pronouncing her name correctly. The hole was along the metal of the grate. There are pictures in the record as well, which counsel cited too. There is the metal frame of the subway grate surrounded by a concrete frame that's fairly narrow that holds in place the metal of the frame. And then that frame next to it sits the rest of the sidewalk, the concrete for the rest of the sidewalk. If you look at the pictures, it helps to clarify it a great deal. But there is no dispute because during her deposition, the plaintiff circled in red the location of the fall as that concrete frame. And indeed, there are admissions from the CTA who was brought in as a third-party defendant. By Walgreens. Correct, by Walgreens. That in fact, they have a duty to maintain the concrete subway frame. So there is simply no dispute that it was not otherwise within the city's duty to maintain the location of her fall. And indeed, if it had been the sidewalk where she fell and not the subway frame that was not in our duty, then she would not have needed judicial estoppel and equitable estoppel and all those other theories to bind us to admissions because we would have had a duty directly. Indeed, we have no duty because it's the CTA's subway frame. It's their duty to maintain it. I want to start by just reading the particular answer, the particular allegation of the complaint and the answer in response because I think that will help clarify too. Again, it's settled that the allegations and answers must be read together. And it's only proper to bind a party to an admission with respect to what they've actually said and with respect to what they actually knew at the time. We did not know until six months after these answers that Ms. Hrivka fell on the subway frame. So the allegation that she alleged that she's seeking to bind the city with is that the city, quote, have within its corporate limits public streets, sidewalks, curbs, and adjacent parkways, which it regulated and controlled for the use and travel of the general public, including a public sidewalk located in particular in front of 933 North State. All that's saying is within the city of Chicago, there are streets and sidewalks and curbs, including a sidewalk in front of 933 North State. That's true. That's a truism. That is a fact. We could not have denied that. There's nothing we could have said differently. But what we answered specifically was we admit the public right of way at or near the site of Plaintiff's alleged accident is and was on the date of the alleged accident held in trust for the benefit of the public by the city. So there is indeed a public way at or near the site of 933 North State, the location where she fell, that the city holds in trust. But admitting that is not the equivalent of admitting a legal duty to maintain the specific location of where she fell because the city doesn't have a duty to maintain as a matter of law everything that sits on the public way. It's just a fact of law that there are many things on the public way the city has no duty over, including the parking boxes, including newsstands, including utility poles. Including grates. Including the frame. Including the grates and the frame that belong to the CTA. So is it clear that there's a line of demarcation that this area that encompasses this depression or hole or whatever you want to call it is within the CTA frame that is part of the grate and the frame that surrounds it? It's not the public sidewalk? That's correct, Your Honor. It's very clear if you look at the photos. There is a line. You know how whenever there's a sidewalk on Crete it's like there's a block and then there's a line that divides the next block. It looks exactly like that. There's a frame that's long and rectangular around the grate and there's a line that demarcates the difference between the frame and the grate and the sidewalk. And Ms. Ziricka circled the frame itself and not the public sidewalk. That was not disputed before today. So again, the city's answers have to be read in light of what was asked. She did not ask us to admit that we maintained the particular frame where she fell. If she had asked that, we would have denied that. We did not know that's where she fell before the statute ran against CTA. In fact, in her discovery request, she sent us an interrogatory in 2009, which was before the statute ran, that asked us to admit that we had control over the particular situs of the occurrence, control of the premises at the situs of the occurrence. We sent her back in November 2009 in objection to that, saying we could not answer it because she hadn't identified the situs of the occurrence yet. That was within the statute. She, at the same time that she received that interrogatory response, she also received our other discovery, which included 311 reports that described CTA frame, CTA grate, and CTA was referenced over a dozen times. She was on notice that it was a CTA grate. Therefore, she had an obligation to research, she's the plaintiff, her legal claims against potential defendants. She used that same discovery to identify three other defendants that she added in her next amended complaint based on permits that they had to do work in the area. That's where a couple of construction companies and electric companies, she sued them, but for whatever reason, she did not sue the CTA. As a matter of law, she might have been operating under a mistaken impression about what the legal duties were and where they lay. That's not an issue of fact the city can admit away. That's just a question of law for the plaintiff to research. The plaintiff's responsible for her claim. The plaintiff is responsible for the allegations in her complaint. If she wants the defendant to admit particular facts within our knowledge, then she has an obligation to put those facts into her complaint. She did not put any facts into her complaint regarding the location of her fall. She simply said there is a sidewalk in front of 933 North State. Indeed, there is. It cannot be denied. In addition, one final point on that. It just doesn't make any sense why if the city had indeed known the site of her fall on the subway frame back when we were answering the complaints, that we would have not did exactly what we did the moment we found out at her deposition that she fell in the CTA frame one week later we moved for summary judgment. If she had told us before we answered that the fall was on the subway frame, we could have gotten out on a motion to dismiss. So these doctrines, judicial and equitable estoppel, usually pertains to defendants who have some reason to hide something. The city had no reason to hide our lack of legal duty over the location of her fall had we known the location of her fall. Just briefly with respect to the voluntary undertaking theory because that came up. Voluntary undertaking, the Supreme Court has made clear, are limited to the particular undertaking. They don't create a duty to maintain in all perpetuity. If you fix a hole one time, it doesn't mean you have to keep fixing the hole. But the plaintiff in this case has no evidence that the city did any undertaking at all at 933 North State. And it has to be at the location where she fell and has to be in some way connected to her particular injury before there would be a duty under the voluntary undertaking theory. She relies on the testimony of our civil engineer, John Herrera. He denied specifically knowing anything about anything that happened at 933 North State. He simply described the city's general practices. If we hear about a complaint, we'll go out, we'll look, and we'll see who has the responsibility to fix it. If it's the CTA, we'll notify them. He did not testify that he went out or that anything was done at 933 North State. In fact, in our brief, we quote his testimony in which he specifically denied knowing anything about 933 North State at all. If someone put the city knew about 933 North State, there was enough complaints to put the city on notice that something was wrong. Well, that would be relevant, Your Honor, if the city had the duty over the location. In fact, but again, this was on the city. Not the duty, just the knowledge. Well, the city, but you don't create a voluntary undertaking over something you don't otherwise have a duty to maintain unless you are specifically doing something at that property. It's undisputable that we did not have a duty over the subway frame. So even if we did have knowledge there was a hole on the subway frame, we still wouldn't have a duty to fix it. But the voluntary undertaking theory would create a duty if we specifically had done something that made it worse, that was negligent. But there's no evidence we did anything there. But you didn't know it was the grate that was causing the damage? You just had people calling in and said there's a hole on the sidewalk at 933 North State. Didn't you have a duty to go check it to see if it was a grate or not problem? Or just a parkway problem? Well, there's no evidence about what actually was done. There was testimony from Walgreen's store manager that the holes were fixed. We don't know by who. Obviously someone did something. But there's no evidence in the record, which even the plaintiff is conceding today, about who did what. We just don't know. It's not in the record. But there is some evidence in the record, though, that some notations in the 311 reports or records that when these calls came in that there was some determination made that this was CTA's problem. Wasn't there some notations on the 311 records that this is CTA's property? Well, there were. Again, the calls were for two years prior to this incident, from 2007, and there were indeed 311 reports that described CTA grates. So, you know, as far as whether the city actually undertook to do something about that grate that we would not have otherwise had a duty to do. Wait, those were amendments that were done after the complaint. I'm sorry, Your Honor? Those were amendments done to the 311 calls after the complaint was made. Then someone changed it to say it's a CTA grate. I don't believe. Oh, you mean after the 311 complaint? Right, they called sidewalk, and someone changed it. So that meant someone inspected it to say it's a grate problem. So the city thought that there was a sidewalk problem. Somebody in your employment went out and decided it's a grate problem and then amended the 311 calls. Okay. Even if that's true, Your Honor, that we knew it was a CTA grate at the time, that doesn't mean we had a duty to repair it, and that doesn't mean that we voluntarily undertook to do anything that would create a voluntary undertaking theory for the plaintiff. Again, the voluntary undertaking theory has to be very specifically tied to the undertaking. Well, there's no evidence in this record by anyone. Is there? Maybe there is. Maybe Mr. Hollander can enlighten us, but there's no testimony that the city did any repair work based on some complaint that was filed about a defect near Walgreens. Absolutely correct, Your Honor. No evidence in the record about anything the city did or did not do about that. So there could not have been a voluntary undertaking because that has to be tied to something the city specifically did. If we didn't do anything and we didn't otherwise have a duty to do anything, we're not liable. If we didn't have a duty to do anything and we did something negligently and she had evidence that was tied to her injury, perhaps we could be talking. But this happened in 2007, and there's no evidence that her injury, her fall in 2009, had anything to do with this hole, whether it was the same hole, we have no idea. It's a long subway grate. We don't know what part of the subway grate they were complaining about in 2007. And there's, again, no evidence we did anything in 2007 that was in any way tied to what happened to her in 2009. With respect to the other arguments that we've raised in our brief, the 3104 immunity and also the open and obvious, we would rest on our brief and also on the argument and brief of Walgreens with respect to open and obvious unless the court has specific questions on those points. We'll hear from Mr. Hollander. Thank you, Your Honor. We ask that this court affirm the summary judgment in favor of the city. Very briefly, just a few comments. With respect to the city, the records are pretty clear here. If you look at the 2007 repair records, it says, and, again, these are not easy to read, even for a plaintiff's lawyer, but it says comments from hole and sidewall. And if you just look at the records in and of themselves, they're confusing. And, again, it's multiple depositions. We weren't able to get Daphne Ward's depositions until late in 2010 to help us decipher the records. Do you agree the fall occurred in the frame or not? I agree that it was in the sidewalk, the concrete adjacent to the frame. Adjacent to the frame? It's adjacent to the frame. There's, like, an apron. Yeah. So did she fall in the frame that is CTA property? Yes. It's the concrete. Ultimately, it's what we learned. It's the concrete that's adjacent. So it's not the city sidewalk? Yes. All right. All right. And with respect to the open and obvious arguments, they weren't raised in summary judgment. Even if they were raised before this court, the court wants to entertain it. Those present genuinely. Well, they aren't waived because on review of summary judgment, city and Walgreens can argue to us any basis to affirm the court's judgment. So they're not arguments that are waived. They're arguments that they can present to us as a basis to affirm the decision that was entered. Right. To the extent the court wants to entertain those arguments, that presents a genuine issue of material factors. It almost always does in an open and obvious context. And, again, with respect to the McDonald's case that we cited in our brief, clearly you have to look at the facts and circumstances, and it pertains to the general area and the confines of the invite to determine what is applicable. And unless the panel has any questions, I would respectfully request that this panel reverse the trial court's order granting summary judgments to the defendants and granting our cross-making for partial summary judgment. All right. We appreciate the comments. The case was well-argued and well-briefed, and it will be taken under advisement.